My pen exploded, so I asked if they would let me have the dry one. Our next case for today is 2016-1392 United Construction Products v. Tile Tech. Mr. Cunningham, please proceed. Good morning, Your Honors.  Mr. Cunningham, the district court noted in its opinion that Tile Tech had not paid the amount of sanctions ordered in the motion to compel. Have those been paid at this point? I believe they have not yet, Your Honor. I believe that it has not been pressed upon them by the appellee. It's an order of the court. Yes, Your Honor. That hasn't been complied with. It seems like there was some gentleman's understanding, as maybe the appellee's counsel could inform about that. But I believe that there was some gentleman's understanding to wait until after the appeal, perhaps, to resolve that issue. Is the district court aware of that general understanding? No, I'm not aware of that, Your Honor. I apologize. Tile Tech's designated witness admitted in his deposition that he threw away all the notched washers when he learned about the commencement of the lawsuit, and he never disclosed the mold of the washers existed, and United Construction filed a spoliation motion. Why did Tile Tech refuse to hand over the mold until after the deadline for the motion to compel had been passed? It's really confusing to me because the washers had been sold to the public. I believe the washers had never been sold to the public. There were a few that were given away. Well, United was able to introduce one into evidence. Again, there were perhaps some that were given away during some sort of experimentation, but I think that the testimony is that they have never been sold with the combination. Now, again, the patent claims themselves are not just for the notched washer. Patent claims are expressly limited to a combination of factors, a combination of elements. One of the elements is that it's the wood surface products that cannot include the notched washer, but my client sells ceramic surfaces, tile surfaces, brick surfaces. Does your client still have a mold and notched washers? Because I did see in the record, as Judge Wallach mentioned, that your client seems to have gotten rid of all of those, but yet you're here arguing that the scope of the injunction is improper because it asks you to surrender those. Yes, Your Honor. I'm confused about your interest in the issue. First, the notched washers, when the cease and desist letter was received, my client destroyed all the notched washers to make sure that they wouldn't have any possibility of infringing the patent. It's not a necessity to have a notched washer. They can sell their products with a fully round washer without a notch. It's a convenience to have a notch, but it's not a necessity. You can put, you can- Wait, I don't think you've answered my question, which is, does your client still have notched washers? No. First, my client does not have notched washers. Does your client have a mold? My client has a mold that immediately removed the notched portion that would create the notch in the washer. Now, of course, first, that yes, he has removed the notch so that it is a fully round washer mold at this point. Second, my understanding is he did not have the mold when the discovery was at the beginning. Most of the notched washers were created by just simply carving the notch out of the washers. When he got the cease and desist letter, he destroyed them. What is your interest in now arguing that the scope of the injunction is improper and should include notched washers? Well, Your Honor, again, the notched washer, my client would not like to be restricted any more than he has to under the patent. The patent clearly requires a combination of things. The notched washer in combination with wood surfaces and pedestals of certain threading is basically the several elements in the claims. In fact, in prosecution history, they added the limitation that it would be boards as opposed to slate, tile, ceramic, or anything like that. So the limitation of the notched washer is not all that this patent is all about. Page 14 of the blue brief, you argue the five part Malone factors. And then you say, you address them in each factor in turn. Although it is worth noting at the outset that the district court made no indication at all that it considered any of these factors and gave this court scant material to make any review. Let me read to you from Malone. It is not necessary after the five factors, immediately after they list the five factors, it is not necessary for a district court to make explicit findings to show that it is considered these factors. So what's the point of what you say at 14? Why, I think it goes certainly to the reasonableness of the court's determination. Now, this is a default judgment as opposed to a dismissal. In Malone, it was a dismissal of a plaintiff's claims. This is a default judgment against a defendant's defense of an allegation of infringement. I don't think you're hearing my question. The blue brief says the district court made no indication that it considered. And the opinion you cite in the sentence following the five factors you list says it is not necessary for a district court to make explicit findings to show it considered. Well, at the end of the day, then, it requires this court to make a particularized review of the evidence and determine whether the court was correct or not. It would have been helpful to this court if the district court judge, the one with the most close relationship to the two parties, if he would have listed out the reasoning for his decision, would have been an assistance to this court on reviewing it on appeal. Even though the opinion you cite says the court doesn't have to. I don't think that alone would make it reversible by any means, but it doesn't help. Well, I would have appreciated if you had cited it for me. Your Honor, if it pleases the court, I just want to point out again that my client sells these flooring surface products, walkways, patios, and the like. And prior to the patent at issue, it's simply a flooring. It could be stone or the like. The pedestals are usually threaded. The cleverness of it all is that between the cap and the base of the pedestal is a simple, inexpensive PVC piping that's cut to the right height. What the patent added was simply that for purposes of the contractor to repair or replace a particular tile, they can make these washers that are in the prior art, they would make them notched so that you could rotate the prior. A good example of what I'm talking about is figure 12 and 15 in the patent, A37 and A40, I believe, where they show that if you rotate the notched washers around just so, you're able to remove one panel without having to remove many other panels to get to it. Then you replace that panel with a repaired panel and it makes it a convenient repair. And that's the advance. And my client had plenty of product that he sold prior to the notch washer being on the market without the notch, which is simply the standard washers locking the pedestal and the flooring together. Mr. Cunningham, at page 24, you argue that much of the conduct of tile tech's trial counsel is based on the fact that he normally practiced in California courts, not federal court. This quote, this explains attorney's so-and-so's, his name, unfamiliarity with the more rigid practices in the federal court system. It's been a while. I went to law school in California and I have some familiarity with the California Code of Civil Procedure. Do you have any authority that says that federal civil procedure is more rigid than California civil procedure? The courts are tougher in federal court than state court? Perhaps I used the wrong term, but certainly he was more familiar with the state court practices generally. I understand from my reading of the cases that he took this case on fully thinking that it was going to settle quickly and that it had good reasons. So he didn't have to know the rules? Your Honor, yes, he should by all means have litigated plus attempted to negotiate settlement of this case. No good to try to negotiate a settlement without also pursuing litigation in parallel. I know that he should have also brought in experienced patent counsel to help him with federal court rules and procedures. No, no, no. The rules governing discovery and sanctions are the same no matter what. In patent cases it's not different. I just know that he agreed to a six-month discovery cutoff case for a patent infringement case that has 19 claims. Several elements in each claim and I would have handled this. This is about spoliation and refusal to obey the orders of the court. Now importantly, the spoliation, there's never any dispute over what these notch washers look like. Whether they had one in their hand or not, the fact is that my client destroyed them upon getting the cease and desist letter. There's no dispute over the notch washer. The fact that our client would have loved to have used the notch washer as a convenience to its customers, but destroyed them to avoid the likelihood of any infringement by him or his colleagues. There is no dispute over what it looks like. So spoliation I think is a, in fact it was withdrawn, the motion itself for sanctions on spoliation was withdrawn. The most important aspect of it is it really was no dispute over what the notch washers look like. It's no dispute over the fact that my client had some at one point when he got the cease and desist letter. It's not spoliation, it's just like any accused infringer would want to remove his inventory of that and did that before perhaps consulting counsel. I don't know exactly the timing, but it certainly wasn't something that he did in order to hide the fact that he had had some. He never denied that he had notch washers to my knowledge. Mr. Cunningham, you're into your rebuttal time. Would you like to save the remainder? Yes, Your Honor. Very good. Here comes some counsel. Good morning, Your Honors. David Von Gutten appearing on behalf of the Appley United Construction Products Inc. DBA Bison Innovative Products. And it may happen that I will refer to my client. When I do, I will refer to my client as Bison. With respect, I thought I would go right into some of the questions that were raised and make out some points that I think I needed to immediately address. One, with respect to the sanctions, the sanctions have never been paid. They've been demanded, they've never been paid. There is no gentleman's understanding. There is nothing to that effect. The only thing that was ever raised, I believe, was at the hearing before Judge Real, and I believe I'm pronouncing it correctly. I have always heard it Judge Real, though it looks like it should be Judge Real. I do not like to mispronounce judges' names. But the thing that was brought up by counsel was he thought that it could be included, the sanctions, as part of some settlement. Well, yeah, they could have, but there is no settlement. And the sanctions are unpaid. They have never responded. When the judge reads the transcript, it won't make any difference because it will be spelled the same way both times you pronounce it. Correct, Your Honor. I believe that's true. With respect to the washers, I think Judge Wallach, you correctly noted it was from the evidence that a washer was sold, and it was after the case had been brought. There was an invoice. I think that Judge Stoll was asking opposing counsel a very precise question, which is why should they be banned in the injunction from selling the notched washer when the patent claims are not a single claim as to a notched washer. They're to a system overall, but the injunction very broadly prevents them from ever using a notched washer again in any other device, even if it was in a totally unrelated field. So why is that? I'm sorry. I didn't mean to interrupt. I believe, Your Honor, that the injunction says that they are not to infringe upon the patent as described in the tile products. And then it goes on to make it a little more clear, just to say it's the tile tech products, and then goes on to discuss the issues with respect to making sure it's nothing similar, that they don't try to do something else. What page is the injunction on? And can you direct me to it? I referred to it in my brief, Your Honor. Come on. When do you law clerks come up with it quicker than this? A-1. Okay. Just A-1, I believe it would be. The injunction is merely because, as I referred to it in the brief, Your Honor, and the issue in this case, I believe, more importantly, was about the fault. A-5? No. I'm sorry. Where did you say the injunction is? I have it here, Your Honor. A-6, actually. Permanently enjoined. It would be under the first claim for relief. Got it. Thank you. So which page is? It's done under the first claim for relief, page A-2. And then it's enjoined. Do you see paragraph 2, where it says, defendant shall immediately surrender to plaintiff any mold or other device by which any notched washer utilized with the patent was made and any and all notched washers made by the plaintiff? Yes. The concern is that that language is more narrow than the scope of the claims. And I don't see where in your complaint you've alleged contributory infringement or induced infringement based on the sale of just the washers. Yes, Your Honor. The issue with respect to the patent is that the notched washers were the key part of the infringement. And so this was to eliminate the part of the infringement because this was a system. And the notched washers made it special, which is what Mr. Cunningham recognized. Okay. So your position is that even though the claims cover more than just a notched washer, the claims cover at least one element of the claim. And it's, to you, a special element that maybe is not sold as a staple in commerce. But I need to know, did you assert contributory infringement or induced infringement based on the sale of the washers? We asserted the infringement and contributory infringement. The point is that these are made of tiles, decks. They're made of pedestals. And then it's the key to that system is the notched washer, so that was what was important. And that was also what was important as part of the discovery process of when there was a problem. I understand completely what the scope of the claims are, what the technology is. I understand what the patent is directed to. What I'm looking for is to see where it is that you allege that the washers alone contributorily infringed, so that I can understand how the scope of the injunction is proper in light of your allegations, which have been accepted as true. I would believe that would just be encompassed within the complaint. I cannot go any further on that. You don't have a specific page? I don't have a specific page to give you right now. I was focused more on the default judgment as opposed to the other two, but I believe that on the other part of it, which is the scope of the injunction. Let me help you. Do you have your appendix? Yes, I do, Your Honor. Your complaint is at page 407, and this is the only place where you allege contributory patent infringement. And page 408, your third claim of relief is where you allege induced infringement. The problem is you don't actually single out the washers anywhere. That's the only problem. Well, Your Honor, I'd have to stand on what's there, because if we don't single out the washers, then we don't. But it was the washers were the key element or the key part of what made this special. Is it possible for them to use the washers in a product that would not result in infringement? Not the notch. Well, if the notch washers were used in a totally different way, certainly. With respect to the system that's involved here, I believe no. They're using a round washer, I believe, or allege that they're using a round washer now, and I would have to double check, but I do not believe, Your Honor, that that would probably infringe. Well, as I understand the order, they're not prohibited from possessing or using them. They're prohibited from manufacturing them. Manufacturing, selling, anything that's related to using those in a way that would compete with our products, thereby infringing the patent. So just to be clear, so you don't believe this injunction prohibits them from manufacturing notch washers and using them in a completely non-infringing manner? If there was a possibility of a non-infringing manner, yes, but all we know is that's what they were used for, and that's what we were trying to prevent used in the system that is described in our patent. Now, I'm not sure of all the possibilities of what a notched washer could potentially be used for. There was no use for it that we are aware of other than this one use, and this is how they used it, and this is how they sold it, and this is how they marketed it. So that was why it had to be stopped with respect to the notch washer, yes. Going back to some of the points that we had that were raised, I believe, by Judge Wallach, because these were, as I said, the notch washers were not all given away. They were sold. We had one done after the case had begun. With respect to the mold, we understand that they still have it, but they say now that it's been sold. Where's that sale in the record? The sale in the record, or where it's mostly mentioned, is in the transcript of the testimony of the Tile Tech representative, and it's mentioned in my brief specifically where we went through, here's the invoice, here's all of this, and he said, I don't know where it came from, but it shouldn't have gone out if I had it, but it also showed that it had a Tile Tech logo on it as if it had come from a mold, and it was not cut, because that was part of the problem with the discovery process. They first say, we don't have any, and then when we created it, they were cut from plastic. Then maybe they were made with a 3D printer, and then after the order to compel and after the motion for default was pending, then they said, oh, we have a mold. It was all through that process. With respect to the issue of saying that the Tile Tech's counsel was not familiar with federal rules, and I believe you pointed out how you thought the rules, the judge told counsel how the rules were the same, we weren't necessarily just even referring to rules. This is just not responding to discovery, and I think that's an important point to be made. With respect to the exfoliation motion. The rules require you to respond to discovery. Yeah, that's true. With respect to the exfoliation motion, and counsel said how it had been withdrawn, but it was only withdrawn because judgment entered. There was no reason to keep exfoliation motion in effect when the judgment had already entered. How do you respond to the argument that the scope of the injunction is too broad, because it requires Bison to remove just images, and not Bison, but it requires Tile Tech to remove images of Bison's product, even if they're not used in a way where they're attributing those images to themselves? Well, the only use we had ever seen for any of it was pretty much through their website and maybe some other materials where it's misrepresented, and that was the allegation. These were misrepresented as being their work or their project, and that itself is deceptive. It was to remove them so that there is no indication or implication that these are their products. They were taking Bison's ideas, its intellectual property, its work, drawings, as well as other images of products. It was taking those things and passing it off, essentially, as their own. I understand. I completely understand that that's improper. My question is, could the injunction be read to also preclude them from doing, say, a comparison where there's your product with their different product that they come up with some design around, or somehow comparing the products? They would be able to use those. They would be able to have images that are attributed as being your work correctly on their own website. That could be, Your Honor. I don't think that the injunction would go that far, but if it did, in the abstract, we have nothing to that effect that would show that that is some sort of problem that Tile Tech had. What we had here was we saw these things and demanded they remove them. They had them on there. They took drawings, took other things that we put on there. I understand. I'm worried just about respectively. When the law of doing a comparison of products and attributing work, I don't think that really is at issue or applicable here. I don't think the injunction would go that far, and if it did, I think that it would be difficult to enforce. I don't think the injunction would prevent them from saying, here's a Bison product and here's our product, and ours is trying to say ours is better. I don't think that's something that would be the proper subject of an injunction, but I don't think that's what's happening here. What this was done was to specifically deal with a specific problem, which was Tile Tech taking my client's work, my client's intellectual property, and passing it off on its own. That's what the injunction is for, and that's what I think it does, because there was an allegation of misrepresentation by doing that. That was deemed to be true, and so that's what the injunction prevents. Okay, Mr. Van Gunten, do you have anything further? Yes, I was going to at least, and I can go further. The point that I was going to make, Your Honor, overall. Lawyers usually can always go further. Of course we can. We can always come up with something that's safe and simple. It's not a crime to give back time. I understand, Your Honor, but you know what? That's hard. I'll just conclude, Your Honor, that I think the question is fairly straightforward. Are you allowing Tile Tech, the appellant, to game the system, to not follow the rules, not follow court orders, waste my client's time and money, the court's time, delay, hinder, and obstruct Bison and the litigation process, and then allow them to get away with it, simply by saying counsel was inexperienced, it wasn't bad enough, and Bison was really not hurt that badly. That is what they're telling the court, and it is simply not true. Despite the examples also of why this case couldn't have gone to trial and the true set of facts, delay, the obstruction and delay, was hard on my client because delay, justice delayed is justice denied. My client has to try to sell its products and having somebody doing what Tile Tech was doing and them not being able to get to trial prevents that. Thank you very much. Okay, Mr. Cunningham, you have a few minutes of rebuttal time. Yes, Your Honor, thank you. First, I'd like to respond that counsel here for Bison was the one that actually drafted that judgment and those findings of facts, and the district court judge simply signed the judgment. It's called a regrettable practice in the Ninth Circuit that's disfavored according to the Anheuser-Busch case that I've signed in my briefs. So his unfamiliarity with it is a little surprising. The fact that the allegation that this notch washer was sold with a wood paneling product is certainly disputed. In fact, there's no evidence saying it was. That's just attorney argument during a deposition, presenting something at a deposition saying this is what it was. There's no evidence that was elicited from any Bison witnesses that provided that. One of the problems, of course, with a default judgment is that there's just simply no evidence here to one way or the other. But the sale is certainly disputed. My client would have disputed that. Yes, but you now have counsel for Bison on record in the appeal, and you can quote it back if necessary, saying that he doesn't believe the injunction extends as far or could be applied legally against simply use of the washers in a totally non-infringing manner, and you likewise have the same statement by him as a representative of his client with regard to the Lanham Act claims as well and the marketing if you were to do so in a non-passing off manner. So even if the language of the injunction could be read as broadly as you suggest it should, counsel for Bison has taken a very reasonable interpretation of it and indicated that he does not read it to be that broad, and certainly you now have that admission by his counsel so that if your client does use the washers in a non-infringing manner, you have an admission by counsel that that wouldn't be covered under the scope of the injunction. And in any case, the injunction is preceded by precatory language in which the court notes that it's found that defendant used images of plaintiff's products, projects, and drawings on its website and through other marketing materials representing that such products, projects, and drawings are its own. And that's what the injunction prohibits. Obviously that also would be disputed if we could have the opportunity to pursue this case on its merits, which is favored. I mean, it's disputed. Our client was surprised to find that his website had an image that wasn't his own product. That's me on the record saying that's my understanding from my own client. I believe that's what the testimony says in the deposition, too. He was surprised. In fact, it was very cryptic up until the deposition as to what on earth they were even talking about. They used a written house project. I don't think that that's something that we can consider or review on appeal. Okay, so in any event, I don't know of any authority that supports binding Bison to what current counsel says in court here as to what this injunction reads. And it doesn't obviously deal with any of the gray area in between what is legally supportable as an injunction for patent infringement. And what he presented here, a statement in court, both in the trademark side, which is the last part of the injunction, and with the patent side, which is the first three parts of the injunction. Well, when you say you don't know of any legal precedent, I don't know how that can be when counsel makes a representation and then if they prevail in the case in part on the basis of that representation, then I think that representation becomes binding, whether it's claim preclusion, issue preclusion, race judicata, whatever, however you want to frame it. But I think that if counsel prevails in part on the basis of particular arguments it made, that you can actually bring them up later if necessary. Well, I just find two problems with it. One is the injunction is exceedingly overbroad, on its face, and it would require that kind of representation both within the industry. I mean, after all these two are competitors and they have to convince customers that they're not going to be infringing if they take on a particular project from my client. So he's hindered in that way. He's going to have to both present both the injunction, but also, well, I know what the injunction says. It says any substantially similar product, but here's where counsel said in court that they would never apply it that far. And I think that would be very hard in a competitive sense between two competitors. I think that that language is clear in the injunction. The question is whether that language is clear, whether that substantially similar language is clear, as meaning substantially similar, no colorably different, meaning that it also would infringe the claims. That kind of language is actually supported by the case law as being appropriate for an injunction. Well, it's immediately following. It says I may not be able to sell, use, make, any adjustable building surface support product incorporating the patent or any substantially similar product. So on one hand, it's the product that incorporates a patent, and then it's common or any substantially similar product, which strongly implies you're talking about products that don't incorporate the patent. That's what the language says. Mr. Cunningham, we're well beyond your rebuttal time, so we need to bring this case to close. I thank both counsel for their arguments, and this case is taken under submission. Thank you, Your Honor.